Case 3:08-cv-00021-JLS-BLM   Document 38-3   Filed 09/16/2008   Page 1 of 6

**EXHIBIT 1**

KAYE ROSE & MALTZMAN LLP

Emerald Plaza
402 West Broadway, 21st Floor
San Diego, CA 92101-3542
TEL (619) 232-6555 • FAX (619) 232-6577
E-MAIL sd@kayerose.com

May 10, 2005

**Via Facsimile, First-Class Mail & Email**

Mr. Gregory Strasburg
1221 Ocean Avenue, Apt. 1501
Santa Monica, California 90401

    Re:    M/V JUST A NOTION, Official Number 1085925
            Possible Sale of Fractional Interests in Vessel
            Our File No.: STR1.002/45694

Dear Mr. Strasburg:

      During our telephone conversation on Monday afternoon May 9, 2005, we spoke about my recommendation of engaging a marine surveyor to verify the status and quality of the work completed by Mr. Blair to date as well as a reasonable time for its completion. We discussed the status of Mr. Blair's work on the vessel in light of my discussions with Tom Cleator who furnished his candid and confidential advices regarding the progress of repairs to the vessel. You indicated that you wanted to think about it before authorizing the surveyor's appointment. I recommend proceeding with appointment in order to ensure appropriate marine quality and enhance (or at least preserve) the vessel's value for sale purposes.

      You further indicated that you felt you had two options with regard to JUST A NOTION. First, you felt that you could market and sell the vessel. Secondly, you felt you could proceed with Mr. Blair's marketing idea selling fractional interests in the vessel. I stated that the latter option was not correct and that it was illegal to sell fractional interests in a vessel without compliance with state and federal securities laws. You said, "This is the first I've heard of it." I reminded you that we discussed this in a conference call with Ross Millie about 4 weeks ago when we talked about the documents Ross forwarded to me. In order to restate our conference call with Ross Millie, I memorialize our conversation and provide additional detail in support of my previous recommendation.

    A.    <u>The Sale of Fractional Ownership Interests in Just A Notion</u>

      You were contemplating a proposed transaction with Peter Blair involving the sale of fractional ownership interests in the vessel. It is not necessary for me to go into any significant detail regarding the discussion which follows. The following is presented in order to make it absolutely clear that Mr. Blair is proposing a transaction that is fraught with problems under state and federal law. In my legal opinion, the risks and expense to even implement such a plan outweigh the potential benefits.

[L:\Strasburg\JUST A NOTION\Corres\Strasburg002a.wpd]

LOS ANGELES / LONG BEACH      SAN FRANCISCO      Yacht Club LLC
1801 Century Park East, Suite 1500      One California Street, Suite 2230      2 South Biscayne **000072**
Los Angeles, CA 90067-2302      San Francisco, CA 94111-5401      Miami, FL 33131-1800
TEL (310) 551-6555 • FAX (310) 277-1970      TEL (415) 433-6555 • FAX (415) 433-6577      TEL (305) 358-6555 • FAX (305) 372-9071

Ex.1-1

Mr. Gregory Strasburg
May 10, 2005
Page 2

1. Issues Under State and Federal Securities Laws

The Securities Act of 1933 makes it unlawful for any person to offer for sale any "security" without complying with the provisions of that Act. Section 77(b)(1) defines security as:

(1) The term "security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Basically, in order to offer for sale or sell any "security," it is necessary to file a registration statement with the Securities Exchange Commission and secure its approval before commencing to sell shares. There are certain limited offerings not requiring federal qualification. Under federal law, it is unlawful "in the offer or sale" of any securities in interstate commerce, directly or indirectly, to employ any device, scheme, or artifice to defraud. 15 USC §§ 77(g). There are civil, criminal and injunctive remedies available under the Act. California has similar provisions also containing limited exemptions from registration. However, like federal law, California also prohibits the sale of any security within the state directly or indirectly that employs any device, scheme or artifice to defraud. There are exemptions from registration and qualification under California law such as offerings to less than a certain number of investors and offerings to sophisticated investors. Under the circumstances you contemplate, however, it is open to question whether any of the exemptions would be applicable.

It is settled law that the sale of a fractional undivided interest in a vessel is a security within the meaning of the federal securities laws. Thus, ship shares in fishing boats, being offered for sale, were securities under 15 USC §§ 77b(1), where prospective purchasers received right to receipt of profits through efforts of others. Securities & Exchange Com. v Pyne (1940, DC Mass) 33 F Supp 988. That court later expanded the ruling to include under §§ 2(1) of Securities Act (15 USC § 77b(1)) as securities fractional undivided interests in ships or vessels. Securities & Exchange Com. v Pyne (1941, DC Mass) 39 F Supp 434. There is no legal authority contra to these rulings.

If the offeror were to argue that the fractional sales of an interest in a pleasure vessel were not "securities" within the meaning of the federal securities laws, one would have to secure a ruling from the Securities Exchange Commission that they are not subject to regulation. This would entail consultation with a securities lawyer knowledgeable in this field. Even so, it would appear that the shares would still qualify as a "transferable share" or "investment contract" under the definition.

As a result, the offering of any sales of fractional interests in JUST A NOTION must comply with the federal and state securities laws. A thorough and comprehensive offering prospectus must be

[L:\Strasburg\JUST A NOTION\Corres\Strasburg002a.wpd]

Yacht Club LLC
000073

Ex.1-2

Mr. Gregory Strasburg
May 10, 2005
Page 3

prepared. Exemptions from registration must be explored. Securities counsel must be engaged. Most importantly, you Gregory Strasburg would be regarded as a person involved in any offering since you own the vessel. You would be exposed to liability for any misrepresentation in any offering prospectus. In addition, civil and criminal penalties are provided for violations in addition to the exposure you face individually in any litigation.

As a practical matter, there has been a recent successful sale of "time shares," rather than ownership interests, in a large passenger liner. The vessel is called the WORLD. The offering prospectus was extremely large and consisted of four major documents that took up over 8 inches on a shelf. Even though the time shares sold for upwards of $1 million each and while one might assume that the purchasers were sophisticated, the offering prospectus was necessarily extremely detailed. It is very difficult to prepare an offering prospectus for the sales of fractional interests in a depreciating and moveable asset, especially in light of issues regarding maintenance, repairs, overhauls, operating expenses, perils of the sea and the like. Consider how difficult it will be to describe to 100 "owners" where they can go, how the vessel is to be used and what each "owner" could expect to receive for his or her investment, and how much it is going to cost them to "use" the vessel. Imagine the legal expense for a securities lawyer to prepare such a prospectus. Further, consider how one describes with certainty all those uncertain items involved with vessel ownership and the forces of the sea.

For these and other reasons, offerings of fractional interests in small vessels, while possible, have not been very practical unless the group is so small that it is essentially a partnership of a very small group. In that instance, a simple partnership agreement will suffice. Because of the fact that this vessel is foreign built; *i.e.*, Canada, there are additional issues as discussed below.

2. U.S. Coast Guard Issues

There are two issues to be faced in contemplating the transaction you perceive. First, there is a serious risk that the U.S. Coast Guard will view the fractional interest transaction as a disguised method of either chartering the vessel illegally or illegally carrying passengers for hire. While an owner is permitted to operate his boat, it is not seriously contemplated that any of the proposed "owners" will actually operate the vessel. Instead, the vessel will be operated (and under its current insurance must be operated) by a U.S. Coast Guard licensed master. Secondly, because the vessel is foreign built (not wholly built in the United States), the vessel is not currently eligible to be documented for the Coastwise trade, a prerequisite to carrying passengers for hire. Even if the vessel qualified for documentation, it must be certified by the U.S. Coast Guard to carry passengers. This requires inspections and tests before a certification to carry passengers is issued. If the transaction is determined by the Coast Guard to be a disguised method of circumventing U.S. laws, as is likely in this case, the vessel will be determined to be illegally carrying passengers for hire. Civil and criminal penalties may be imposed. In extreme cases, forfeiture proceedings against the vessel are possible. Since the vessel is foreign built, not presently eligible to carry passengers for hire, there is an additional layer of added expense to even attempt to secure such permission. I question the rationale of the person or persons proposing such a transaction. That is not to say that it ultimately cannot be accomplished. For example, although foreign built, it is possible that application could be made for such purpose. However, I believe that nearly every commercial and documented vessel owner and operator in the Port of San Diego would oppose such application on the basis that the operation would unfairly compete with a U.S. documented vessel.

[L:\Strasburg\JUST A NOTION\Corres\Strasburg002a.wpd]

Yacht Club LLC
000074

Mr. Gregory Strasburg
May 10, 2005
Page 4

Whether you could be successful ultimately will be an expensive and uncertain battle. It sometimes is cheaper to purchase a vessel already documented for this purpose.

    3.    <u>State Sales and Use Tax Issues</u>

In addition to the above issues, the sale of an undivided ownership interest in the vessel brings sales/use tax consequences into operation. Presumably, the vessel would have to be transferred to another entity who would be issuing the "securities" by selling the fractional shares. You are already familiar with the exemption process. While a transfer to a wholly owned company, such as an LLC, does not automatically trigger tax consequences, the subsequent sales of fractional interests would. Those transfers, unless exempted, are taxable. Each subsequent purchaser faces possible tax liability for the value of his or her interest.

Excluded from the above discussion are issues relating to the possible tax consequences to you upon transfer of your interest in the vessel to another entity. These issues would also have to be addressed.

B.    <u>Conclusion</u>

The idea presented to you by Mr. Blair is not new. It has been attempted on many occasions by others. Each time, the hurdles discussed above had to be addressed. In most cases, even after meeting all the legal requirements, the biggest problem proved to be marketing of the shares. The reasons for this are obvious: (1) ongoing financial obligations of the "owner," (2) inability to have any meaningful control over the vessel's use and itinerary, and (3) the fact that the vessel has a limited number of berths during any given period. The easy part is the pricing of the initial "investment." However, the difficulty in convincing someone to purchase an interest in the vessel will be the continuing monetary obligation for expenses of maintenance, operation and repair. It is analogous to a time share but with substantially higher expenses for subsequent use. I am unaware of any successful fractional ownership or time share scheme for a small passenger vessel. Usually, the only people who make the money are the promoters and manager who, having no ownership interest, take their profits and run. These ventures seem to be destined for bankruptcy, disgruntled investors and lawsuits against any remaining non-bankrupt "solvent" defendant.

Your personal exposure in the event of failure of the venture is great. In fact, I believe that the exposure you would have to liability for such a possible transaction is so great that I would urge extreme caution. The legal expenses for maritime, corporate and securities lawyers would be substantial. Legal hurdles would have to be addressed and overcome. In fact, Mr. Blair should be requested to provide examples on any coast where a foreign-built hull such as yours has been successfully transformed into a profitable venture.

Because you cannot legally market fractional interests in the vessel without complying with securities laws, and because any prospectus would have to contain detailed information relating to the U.S. Coast Guard and tax issues described above, I would strongly advise against proceeding with the transaction contemplated. It would require an enormous expenditure of money, and the outcome is uncertain at best, impossible at worst.

[L:\Strasburg\JUST A NOTION\Corres\Strasburg002a.wpd]

Yacht Club LLC
000075

Mr. Gregory Strasburg
May 10, 2005
Page 5

      I believe that the sale of the vessel at best price should be considered the only remaining viable option. The vessel should be put into marketable condition and placed on the market as soon as possible. I continue to believe that you should engage a surveyor as previously recommended in order to assess the present condition of the vessel, establish time frames for completion of tasks, and pass on the quality of the work in accordance with sound marine practices. Any prospective buyer of the vessel will perform a detailed and comprehensive hull and systems survey. It is easier and cheaper to identify and correct problems now and ensure that repairs are marine quality than in connection with any sale.

      I look forward to your response. Please call if you have any questions.

      Very truly yours,

      KAYE, ROSE & MALTZMAN, LLP


      Gerald L. Gorman

GLG:wr

P.S. I have received a copy of the purchase survey by Frank H. Wyatt dated January 23 and 26, 2004. It appears to be superficial. Generally, these are regarded as insurance surveys upon purchase not thorough evaluations of the vessel's systems and condition. The report does not appear to adequately describe the true condition of the vessel at the time of purchase. Purchase surveys on vessels of this size and value should be more comprehensive.

[L:\Strasburg\JUST A NOTION\Corres\Strasburg002a.wpd]

Yacht Club LLC
000076

Ex.1-5